```
 1            UNITED STATES DISTRICT COURT FOR
                 THE DISTRICT OF MARYLAND
 2

 3  --------------------------x
    UNITED STATES OF AMERICA   :
 4            Plaintiff        :
                              :
 5                            :
    vs                        :Criminal Action:RWT-08-203
 6                            :
                              :
 7  OPIO DARRIA MOORE,         :
              Defendant.      :
 8  --------------------------x

 9
                         Monday, November 17, 2008
10                       Greenbelt, Maryland

11       The above-entitled action came on for a Status
    Hearing Proceeding before the HONORABLE ROGER W. TITUS,
12  United States District Judge, in courtroom 2C, commencing
    at 10:03 a.m.
13


14


15


16       APPEARANCES:

17       On behalf of the Plaintiff:

18       DEBORAH JOHNSTON, Esquire
         EMILY GLATFELTER, Esquire
19
         On behalf of the Defendant:
20
         JENIFER WICKS, Esquire
21       MICHAEL LAWLOR, Esquire

22


23


24
    Tracy Rae Dunlap, RPR, CRR          (301) 344-3912
25  Official Court Reporter
```

1                               **I N D E X**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                                     Page

25 Reporter's Certificate                          30

1          MS. JOHNSTON:  Good morning, Your Honor.  We're

2 here in the case of United States versus Opio Moore, case

3 number 08-0203.  I'm Deborah Johnston, representing the

4 government.  Seated with me at counsel table is Emily

5 Glatfelter.  Also sitting with us as our case agent at

6 this hearing is Task Force Officer David Blazer.  The

7 original ATF Special Agent ,Jeffrey  McLoughlin, is not

8 here today, so we've asked Detective Blazer to sit with

9 us.

10          THE COURT:  Good morning.

11          MS. WICKS:  Good morning, Your Honor.  Jenifer

12 Wicks on behalf of Mr. Moore.  And Mr. Lawlor is here as

13 well, asked, I believe, through the Court by the CJA

14 office to be present.

15          THE COURT:  Counsel, we were originally scheduled

16 today to proceed with the sentencing of Mr. Moore, and I

17 received and I have reviewed fairly extensive sentencing

18 memorandum from the government.

19          The defendant has filed a motion to strike it but

20 partly on the basis that it may have been a day or two

21 late, but also alleging that there are some issues that

22 may require review of possible conflicts in connection

23 with the representation of the defendant by present

24 counsel.  I concluded after seeing this that it would be

25 best to defer the sentencing until we sort these issues

1  out.

2          I am not inclined to strike the government's

3  sentencing memorandum.  The government is entitled to do

4  it.  I don't think it was grievously late in any event,

5  but what I am inclined to do is to give the defense a

6  fair opportunity to respond with its own sentencing

7  memorandum that addresses the serious issues raised in

8  the government's sentencing memorandum and give me more

9  time to consider it.

10          The government in its sentencing memorandum also

11  mentions potential upward departures as well as a

12  variance, and I need to study that to see whether I want

13  to give a notice of my own as to a possible upward

14  departure, if I'm going to give one.  Case law says I

15  don't have to do that for a variance, and I don't intend

16  to do that.  I need to take a look at the government's

17  memorandum.  And I want to make certain that the

18  defendant has plenty of opportunity, because the

19  sentencing memorandum, if I were to apply what's

20  recommended in there, would represent a significant

21  upward variance exposing the defendant to the potential

22  of life in prison.  So, that's a serious matter and I

23  want to make certain that it's given the serious

24  consideration that it deserves and the defendant has

25  every opportunity that he needs to respond to it.

1          Now, Ms. Wicks, do you really want to press the

2  question of striking their memorandum?  I mean, I

3  interpret your memorandum as complaining that it was late

4  and you didn't have enough time to review it and that

5  it's raised potential conflicts.  I think by -- and what

6  I intend to do this morning is to discuss a new schedule.

7          We will set a sentencing date; we will give you an

8  opportunity to review and respond more meaningfully to

9  the government's sentencing memorandum.  I anticipate

10  that the length of the sentencing might be a little bit

11  longer than I anticipated when I originally set it, and I

12  want to make certain that you have an opportunity, with

13  the benefit of additional counsel for your client, to

14  review any possible conflict issues that might arise.

15          MS. WICKS:  Your Honor, I don't have any

16  additional argument on my motion.

17          THE COURT:  Well, then the motion is denied.  The

18  motion is denied.  I did continue the sentencing, and I

19  want to make certain we get this all sorted out.

20          MS. WICKS:  My concern is clearly also in terms of

21  specifically my other current client and my former

22  client.  I think to actually resolve the conflict, both

23  of those clients would have to waive as well.  And while

24  I --

25          THE COURT:  Are they clients in this court or the

1 District of Columbia?

2        MS. WICKS:  The current client has a pending case

3 in Superior Court in D.C., where counsel has already been

4 appointed.  But I -- without further information from the

5 Court, I didn't feel that I could disclose anything

6 factually to that lawyer or to the Court there to

7 determine -- to assist in determining whether or not he

8 objects or waives --

9        THE COURT:  All right.

10        MS. WICKS:  -- as to the other client, who is a

11 former client.  It was local charges in D.C. and Maryland

12 and consultation on related issues, but nothing charged

13 at the federal level.

14        THE COURT:  Well, if there is nothing charged at

15 all, why would there be a need to consult with him?

16        MS. WICKS:  Because I think under the rules, as a

17 former client with what I perceive to be an actual

18 conflict, he would have to also waive for me to represent

19 Mr. Moore further.

20        THE COURT:  Okay.

21        MS. WICKS:  He does have counsel that -- he has

22 independent counsel that can advise him.

23        THE COURT:  All right.  Ms. Johnston, do you wish

24 to be heard?

25        MS. JOHNSTON:  I would apologize to the Court and

1  to defense counsel for the few days late on our memo.  As

2  the Court knows, we were doing protective orders and

3  getting disclosure orders for different matters,

4  including voluminous discovery.  We provided that; I'm

5  not sure we were required to.

6          THE COURT:  You've been fairly busy lately, and I

7  understand.  I've already denied the motion to strike it.

8          MS. JOHNSTON:  I did though, however, want to

9  apologize for that.

10         The government is not aware of who these former

11  clients -- the former client or the current client is of

12  the defendant, so we don't know whether or not there is,

13  you know, what kind of conflict there is or what the

14  potential conflict is.  Certainly, we named some

15  individuals in our sentencing memo in terms of one of our

16  allegations that the defendant has continued to associate

17  with individuals who are convicted felons and provided

18  other information concerning his relationship with those

19  individuals.  I don't know the nature of the conflict, so

20  we're not -- neither does Ms. Glatfelter -- so, we're not

21  really in a position to comment on that.  I think that if

22  Ms. Wicks has a conflict that Mr. Moore is entitled to

23  counsel, as the Court has had Mr. Lawlor brought in --

24         THE COURT:  Right.

25         MS. JOHNSTON:  -- independent counsel brought in

1  to see if he wishes to waive that conflict knowingly and

2  voluntarily and proceed with Ms. Wicks.

3       If there is conflicts with other counsel, that is

4  something -- with other clients, a former client, I don't

5  know that there is information that she gained from a

6  former client that is relevant to this proceeding here,

7  or if it would require her to disclose any confidential

8  information or put her in a position where she had

9  confidential information from that former client that is

10 harmful to this defendant -- is helpful to this defendant

11 but would be harmful to him if she used it.  We're not

12 really in a position to comment on that at this point.

13       THE COURT:  Mr. Lawlor, I note you're here.  Have

14 you had chance to talk to Mr. Moore at all?

15       MR. LAWLOR:  To whom, Your Honor?

16       THE COURT:  To the defendant.

17       MR. LAWLOR:  I have not, Your Honor.  I've spoken

18 with Ms. Wicks.  My suggestion to the Court is that this

19 be set off for a little while and give me an opportunity

20 to speak to Mr. Moore individually.  I think in this

21 situation, typically I would meet with the defendant here

22 prior to the hearing.  But my sense is this is more

23 complicated than that.

24       My desire would be to speak with Mr. Moore at the

25 detention center more extensively, after reviewing

1  perhaps the sentencing memorandum and other materials

2  that have been submitted, to get more of a background of

3  the case.  Ms. Wicks has provided me some of that

4  background in speaking with her.  I think there is an

5  issue, of course, not only whether Mr. Moore is willing

6  to waive the conflict but whether or not it can be

7  waived.  It may be a situation where it can't be.

8         THE COURT:  Well, let me suggest this.  What I

9  would like to do is to set a new date for the sentencing

10 and make the sentencing date sufficiently far off that we

11 can resolve any questions of conflicts, and if there is a

12 conflict that can't be resolved have new counsel

13 appointed for Mr. Moore and have enough time to do that.

14        What I would suggest is that we have a date for

15 the sentencing, but also have a date for status

16 conference to review the status of any conflict questions

17 as to how they have been received, if they have been

18 received.

19        MR. LAWLOR:  Your Honor, one additional thing.

20 I'm happy to -- if Ms. Wicks' conflict is such that

21 either it can't be waived or Mr. Moore doesn't want to

22 waive, then new counsel would be appointed, and that

23 would alleviate the conflict with the other two gentlemen

24 who aren't here.

25        THE COURT:  Right.

1          MR. LAWLOR:  If it is a waiver of conflict and
2   Mr. Moore does waive it, I will try to obtain the
3   information regarding the other two individuals named or
4   unnamed and at least provide the Court in a letter with
5   that information, or in a status conference, that
6   information whether they've waived any conflict as well.
7          MS. JOHNSTON:  Your Honor, just briefly.  I'm a
8   little bit confused here.  Generally, conflicts come up
9   in terms of criminal cases in two areas where counsel's
10  representing two people jointly in a criminal proceeding
11  and so and both defendants insist they want to be
12  represented by the same attorney and the Court has to
13  make sure that they're waiving that knowingly and
14  voluntarily.

15         The other way it comes up, generally, is when the
16  government is going to call a witness and the defendant's
17  current counsel or some member of his firm or the Public
18  Defenders' office has previously represented that
19  witness, and then there are issues about the confidential
20  information that may have been disclosed in representing
21  that witness that may or may not want -- counsel
22  representing the current defendant may want to use.

23         The fact that Ms. Wicks has represented somebody
24  against whom there have been criminal charges that we
25  allege somehow Mr. Moore was involved in does not

1 necessarily create a conflict in this proceeding.  We're

2 not --

3          THE COURT:  Here is the problem, Ms. Johnston.  In

4 the classic sense, a conflict arises when an attorney has

5 a duty to client number one to advocate a position that

6 is at odds with the position that he's obligated to take

7 or he or she is obligated to take with respect to another

8 client.  For example, without suggesting any names here,

9 if the government's contention is that Defendant A was

10 aligned in a criminal enterprise with Unknown Person B,

11 then this defendant is going to want to indicate that

12 there wasn't any criminal enterprise or that the

13 involvement in that criminal enterprise was not him, A;

14 it was all B.  Now, if the lawyer has a representational

15 relationship with Client B and, you know, has an

16 obligation to defend or minimize that client's

17 involvement in things.  Rather than to maximize it, it

18 puts him at a conflict, doesn't it?

19          MS. JOHNSTON:  Not if both of them are saying

20 there was no criminal enterprise between the two of them.

21          THE COURT:  I wasn't speaking specifically to this

22 case.  You've got a number of indications in here about

23 his association with other people in various enterprises,

24 and I'm using "enterprise" in a very general sense.

25          MS. JOHNSTON:  Right.  If those individuals say

1 there was no enterprise with Mr. Moore, then there is no

2 conflict in counsel representing both of them.  If both

3 of them are saying they weren't engaged in any criminal

4 conduct together, there wouldn't be a conflict then.  The

5 conflict arises if Ms. Wicks has a Client B currently who

6 is alleging that he didn't have anything to do with the

7 criminal activity; it was defendant Moore who had to do

8 with it.

9        I haven't heard that here, and I don't have --

10 it's not a -- counsel hasn't represented that it's a

11 conflict with individuals who have presented information

12 to the government but, rather, it's a conflict because

13 she represents Mr. Moore and one or more -- at least two

14 people who know him.  The fact that she represents two

15 people who know Mr. Moore in add of itself does not, in

16 the government's view, create a conflict.  The conflict

17 arises if Mr. Moore wants her to take a position that's

18 contrary to her representation of those two people, and I

19 haven't heard that that's the case here.

20        In fact, it would be my supposition that if

21 Ms. Wicks is representing two of Mr. Moore's associates,

22 they're all going to deny any criminal involvement with

23 each other, so there wouldn't be a conflict.  And that's

24 where the problem -- because Ms. Wicks is not saying

25 she's representing -- she has represented someone who has

1 provided information to the government that the

2 government is using here.  That clearly would be a

3 conflict.

4         I believe what Ms. Wicks is saying -- and it's

5 hard, because we're not talking in specifics here.  But

6 Ms. Wicks is saying that she represents Mr. Moore; in the

7 past she represented another person who knows Mr. Moore;

8 and she's currently representing someone who also knows

9 Mr. Moore.  But the fact that they know each other and

10 are associated with each other doesn't create a conflict

11 unless, as the Court said, her former client has said

12 that Mr. Moore is a drug dealer, or Mr. Moore is a

13 dangerous person, or if her current client is taking a

14 position adverse to Mr. Moore's.

15         I don't think we've had anything represented here

16 to say that her current client and her past client has an

17 adverse position to Mr. Moore, which is what I think is

18 required for there to be a conflict, and I don't know

19 that we're hearing that.  The fact that Mr. Moore and

20 these other two clients know each other does not in and

21 of itself create a conflict.  So, I don't think we have a

22 basis at this point to say yes.

23         THE COURT:  Let me ask you this, Ms. Wicks.

24 Without disclosing any confidential communication, what

25 is the conflict that you're suggesting may have arisen as

1 a result of the government's contentions in the

2 sentencing memorandum?

3          MS. WICKS:  I mean, just so start.  Not as a

4 hypothetical.  But in every other case that has been a

5 conspiracy in this district or in D. C. where I most

6 often practice, I think the government often and usually

7 takes the position that an attorney cannot represent two

8 alleged members of a conspiracy or two alleged

9 co-defendants in a proceeding in a proceeding without

10 both of those defendants waiving the potential --

11          THE COURT:  These people aren't defendants in this

12 case.

13          MS. WICKS:  I understand that, but they're clients

14 of mine.  Either a potential or -- there is a potential

15 or actual conflict.

16          THE COURT:  Clients with respect to the criminal

17 acts alleged in this memorandum?

18          MS. WICKS:  Yes.  Specifically, and I don't -- I

19 didn't put this in my memorandum, but the United States

20 has proceeded against the other two people.  They're both

21 represented by counsel.  And I don't mind as a -- since

22 they're named in the memorandum, I don't think there is a

23 problem with me disclosing that as a matter of record I

24 represent Rico Thomas in the --

25          THE COURT:  Now, or --

1          MS. WICKS:  Currently.  That is the client that I

2 currently represent.

3          THE COURT:  But with regard to the matter alleged

4 in the sentencing memorandum or something else?

5          MS. WICKS:  He has a gun arrest in the District of

6 Columbia in 2008.  He's specifically named if the

7 memorandum.  He's specifically named as a person that the

8 government claims Mr. Moore and him shot several people.

9          And I think there is -- it's either one or two

10 murders that they allege in the sentencing memorandum

11 that Mr. Moore committed those acts with Mr. Thomas, and

12 that there was ongoing conspiracy to rob and shoot people

13 for profit.

14          The fact that I simultaneously represented Mr.

15 Thomas during the same time frame, if nothing else, is a

16 potential conflict and I think rises to the level of an

17 actual conflict, particularly in a situation where I

18 understand that Mr. Thomas has not been charged on those

19 offenses.  I've represented Mr. Thomas for several years,

20 including now, I believe, three different gun cases.  And

21 given the conduct alleged by the government of Mr. Moore

22 and Mr. Thomas, I do think that rises to the level of

23 being an actual conflict.

24          Even if it's not an actual conflict, it's a

25 potential conflict.  Because I'm representing Mr. Moore

1  and Mr. Thomas simultaneously, now that I'm aware of this
2  information which at this point I cannot share with
3  Mr. Thomas but I can share with Mr. Moore.  Given my
4  current representation of Mr. Thomas, it is a conflict
5  for me to advise Mr. Moore based on the disclosure of
6  this new information.
7          As to my other client, that is Davont Pendle who I
8  have represented, actually, longer than either of them
9  regarding a number of different matters.  Actually, he --
10 if someone were to approach him, I believe he would
11 consider me still to be his attorney, even though he does
12 not have a pending matter.  There is other counsel that
13 he has had who can advise him about this, but the problem
14 -- and my representation of him has been during the
15 course of time that the government is alleging that Mr.
16 Moore and Mr. Pendle also were involved in, essentially,
17 an ongoing enterprise of conduct.
18         THE COURT:  Ms. Wicks, let me do this.  Get the
19 sentencing memorandum out in front of you there and point
20 me to the specific --
21         MS. WICKS:  Your Honor, I actually didn't get to
22 go to my office yesterday because of a family emergency.
23 So, if I can borrow one from government counsel.
24         THE COURT:  We'll give you a spare to look at.  I
25 mean, I believe from what you're telling me --

1          MS. WICKS:  Your Honor, the first thing, actually,

2    is there was a rather large disclosure regarding a

3    wiretap that the government gave me prior to the

4    sentencing memorandum that contains allegations also

5    regarding conversations with both of those individuals on

6    the wiretap.  So, that was sort of the first -- the first

7    issue is actually not contained within the sentencing

8    memorandum, although it's referred to, but -- and I

9    haven't listened to any of the wiretap calls at this

10   point.  But, just the summaries and the reports to the

11   Court of the wiretap both name both of those individuals.

12         THE COURT:  What I want to do is I want to focus

13   on who those individuals are.  The sentencing memorandum

14   of the government, I think, doesn't reach the issue

15   you're talking about until we get to Page 21, which is

16   the defendant's plan to aid Earl Davis in escaping from

17   prison.  And you're -- I guess what you're telling me

18   that during these conversations, there was mention of

19   other persons who you believe were your clients; is that

20   correct?

21         MS. WICKS:  I guess that section for the record,

22   which is Section B.

23         THE COURT:  Section B, it begins on Page 21.

24         MS. WICKS:  That section does not specifically --

25   I mean, not specifically conversations with Earl Davis,

1 who I definitely do not represent.

2          MS. JOHNSTON:  Your Honor, I believe it's on Page

3 24 is the first mention of Mr. Rico Thomas and Mr.

4 Pendle.

5          THE COURT:  So, we've got -- on Page 24, we've got

6 Rico Lee Thomas --

7          MS. WICKS:  Yes.

8          THE COURT:  -- that's one of your existing present

9 clients.

10          MS. WICKS:  Yes.  In the memorandum, it

11 specifically refers to his arrest in August of '08 on

12 weapons charges.  That's the case that I currently

13 represent him in.

14          THE COURT:  All right.

15          MS. WICKS:  The first person named is Davont

16 Terrell Pendle.

17          THE COURT:  Is that also a client?

18          MS. WICKS:  Yes.

19          THE COURT:  Present client?

20          MS. WICKS:  There is not a pending case, but, yes.

21          THE COURT:  Former client?

22          MS. WICKS:  Yes.

23          THE COURT:  Okay.

24          THE COURT:  How about the other persons named

25 here?  Jamal Darius Travis and Pedro Norman Rich?

1          MS. WICKS:  No.  And not Mr. Bowie.

2          THE COURT:  All right.  Any other parties

3 mentioned in here that are clients?

4          MS. WICKS:  No.

5          THE COURT:  So that's it; correct?

6          MS. WICKS:  I presume for the moment -- as far as

7 I know, there is no one that has provided information to

8 the government in any cooperator capacity that I

9 previously or currently represent.  But without knowing

10 their identities, I can't specifically say that I know

11 that I never represented them.  I know I didn't represent

12 them in providing information to the government about

13 Mr. Moore.

14          THE COURT:  I don't know how the government has

15 the information that's contained in this memorandum,

16 whether it came from them or came from people who have

17 observed the association.

18          MS. WICKS:  Well, there are specific sections

19 where they indicate that -- I mean, anonymous identity

20 but that some of the people are cooperators.  If I

21 previously represented those cooperators, I don't know

22 because I don't know who they are.

23          THE COURT:  Well, let me ask, and I'm not

24 suggesting the government do this.  If the government

25 does not rely upon what's in this second paragraph on

1  Page 24 as far as Davont Terrell Pendle and Rico Lee

2  Thomas are concerned, does that resolve your conflict?

3  Would that resolve your conflict?

4        MS. WICKS:  It's not just what's in that

5  paragraph.  The conduct is laid out further in terms of

6  criminal activity.  I think the other component of the

7  conflict in any -- particularly in a federal case, but in

8  any criminal case, is advising Mr. Moore about the

9  potential for a reduction of sentence; those types of

10  issues.  And given -- I think that would be a potential

11  conflict that is clearly waiveable, but that would

12  certainly be a conflict specifically that would need to

13  be discussed with him.

14        MS. JOHNSTON:  Your Honor, quite frankly, the fact

15  that Mr. Thomas and Mr. Pendle have a prior record and

16  they've associated with the defendant does not create a

17  conflict.  I mean, there just is not a conflict with her

18  current representation of Mr. Thomas on a gun charge in

19  the District of Columbia.

20        THE COURT:  In essence, what the government is

21  saying in this paragraph is this defendant has been

22  associating with some bad people.

23        MS. JOHNSTON:  We intend to show how he's been

24  associated with them, and that includes engaging in some

25  criminal conduct.  Not the possession of the firearm in

1 the District of Columbia by Mr. Thomas, but in other

2 violent conduct with Mr. Pendle and with Mr. Thomas.

3        Neither Mr. Pendle nor Mr. Thomas are charged in

4 any violent crimes associated with the evidence that

5 we're going to present that we're aware of.

6        MR. LAWLOR:  Your Honor, can I just?  Sitting here

7 as sort of an uninterested third party, I think that from

8 what I know that Ms. Wicks just sort of hit the nail on

9 the head.  Mr. Moore at a minimum has a right to be

10 advised, given the information that's in the government's

11 sentencing memorandum and perhaps other information that

12 he possesses about his right to seek, you know, a Rule 35

13 reduction in sentence.

14        I also don't necessarily agree that this isn't a

15 conflict, but I'm not prepared to say one way or the

16 other.  But I think, given the conversation that's

17 already occurred here, it certainly jumps out that

18 Mr. Moore is at least entitled to conflict-free advice.

19        MS. JOHNSTON:  We don't disagree with that, in

20 terms of Mr. Moore.

21        THE COURT:  Let me do this.  I've asked Judge

22 Schulze to be on standby to address representational

23 status that would officially bring you on board, Mr.

24 Lawlor, and I need to get that resolved and give you a

25 chance to consult with both Ms. Wicks and Mr. Moore.

1  What I would like to do is to, being the eternal

2  optimist, set a new date for the sentencing and make it

3  far enough out so that if it turns out that there is

4  simply no way to resolve what Ms. Wicks believes is a

5  conflict, and the new counsel has to come in, that there

6  is a enough time to prepare for the sentencing, because

7  this is a serious sentencing in which the government is

8  asking for life imprisonment and I don't take that

9  lightly.

10          MS. WICKS:  Your Honor, can I briefly consult with

11 Mr. Lawlor?

12          THE COURT:  Excuse me?

13          MS. WICKS:  Can I briefly consult with Mr. Lawlor?

14          THE COURT:  Certainly.  Certainly.

15             (Discussion held off the record.)

16          THE COURT:  Yes, Ms. Wicks?

17          MS. WICKS:  Your Honor, I understand what the

18 Court wants to do.  And my other concern still is if --

19 and clearly, I don't think I'm in a position to advise

20 Mr. Moore and take a position if it's an actual or a

21 potential conflict.  But I think either way that my other

22 clients would need to consult and determine likewise,

23 particularly if it's an actual conflict.

24          THE COURT:  I don't intend to resolve that

25 question right now.  What I would like to do is to set a

1 new sentencing date that's far enough out that either the

2 conflict issues will be resolved or new counsel comes in

3 for Mr. Moore.  And, you know, depending on how things

4 go, we may have to move it again, or we could advance it

5 depending on how quickly the matter is resolved.

6         It seems to me that this is not going to be a

7 short sentencing.  I really ought to set aside, like, a

8 day to do it; right?  Anybody disagree with that?

9         MS. JOHNSTON:  No, sir.

10        MS. WICKS:  No, Your Honor.

11        THE COURT:  Ms. Johnston, you may know the answer.

12 Your office has a four-week monster on my calendar in

13 September.  I think it's Mr. Crowell's case.  It had,

14 like, ten defendants, but it's shrunk down to like two.

15        MS. JOHNSTON:  I don't know, Your Honor.

16        THE COURT:  Well, I've been booking some conflicts

17 with that case in the latter part of that case.

18        Counsel, what about September 24, that's a

19 Thursday, at ten?

20        MS. JOHNSTON:  Your Honor, I'm scheduled for oral

21 argument at the Fourth Circuit that week.  I don't know

22 which day they're going to pick, and it's the third date

23 that they've scheduled.  And in addition to that, I think

24 Mr. Lawlor and I have a trial set in front of Judge

25 Messitte.  I'm hoping that's going to be a disposition

1 with him, but I just --

2          THE COURT:  That whole week?

3          MS. JOHNSTON:  Well, the Fourth Circuit requires

4 us to reserve Tuesday through Friday.  I don't know what

5 day they're going to set.  And when they set it, they're

6 not --

7          THE COURT:  They haven't published the schedule

8 yet?

9          MS. JOHNSTON:  They have not published the

10 schedule yet.  And this is -- I've had to cancel that

11 argument two times because of Mr. Davis' case.

12          MS. WICKS:  Your Honor, I wouldn't be available

13 that week.

14          THE COURT:  You would not?

15          MS. WICKS:  No.  I anticipate that I will be in

16 trial that week, the following week, and at least the

17 following week in D. C.  Unfortunately, that judge goes

18 Monday through Friday.

19          THE COURT:  How about Thursday, October 29?

20          MS. JOHNSTON:  I think that works for the

21 government.  That works for the government.

22          THE COURT:  Okay.

23          MS. WICKS:  That's fine, Your Honor.

24          THE COURT:  All right.  Well, why don't I set that

25 for nine to five?  And it seems to me that's plenty of

1 time to resolve any conflict issues or, if they can't be

2 resolved, to get new counsel involved.  So, what I'm

3 going to do now is I'm going to take a recess.  And so we

4 don't have to move everybody around, Judge Schulze is

5 going to come in and address questions without the

6 government present with Mr. Lawlor and how to deal with

7 that.

8        MR. LAWLOR:  Your Honor, in terms of my dealings

9 with Mr. Moore.  Did you want to set an in court status

10 date or just the deadline?

11       THE COURT:  Yeah.  I think I'm going to do that,

12 just to review the bidding on where we are.

13       MR. LAWLOR:  Alternatively, I can just submit

14 something in writing.

15       THE COURT:  Well, because it may be resolved, I

16 don't think I need to necessarily schedule something.

17 But if it is not resolved, you counsel, both of you, need

18 to notify me and we can have a conference scheduled

19 rather quickly.

20       MS. JOHNSTON:  Your Honor, I think the Court is

21 going to have to do something with Mr. Moore on the

22 record; get a knowing and voluntary waiver.

23       THE COURT:  That's what Judge Schulze is going to

24 do when and if it happens.

25       MS. JOHNSTON:  Okay.  That has to be done.  Before

1 any counsel is removed, he needs to either waive the

2 conflict or agree to give up his representation by

3 Ms. Wicks, who was his counsel of choosing before we

4 proceed with any other counsel.

5          THE COURT:  All right.  Well, I set the new

6 sentencing date of October 29.  Now, the -- I think that

7 -- let me talk to Judge Schulze, but perhaps it would be

8 better to have that handled by Judge Schulze.

9          MS. JOHNSTON:  I don't know what the Court's -- I

10 don't know what Judge Schulze is handling, Your Honor.

11 But if there --

12          THE COURT:  Well, appointing counsel.

13          MS. JOHNSTON:  Appointing counsel to confer?

14          THE COURT:  I'll do the waiver.

15          All right.  If the decision is made, after full

16 and fair consultation with Mr. Lawlor and with Ms. Wicks

17 by Mr. Moore, that he wishes to waive the conflict that

18 you've described, then we're going to need to have that

19 done on the record, and I would assume that a month to

20 six weeks would be enough time to sort that out and

21 discuss it with him and with other clients.  Would that

22 be fair, Ms. Wicks?

23          MR. LAWLOR:  Yeah.  That's more than enough time,

24 Your Honor.

25          THE COURT:  All right.  So, today is the 1st of

1 July.  How about a further conference on this issue on

2 Tuesday, July 28?  Will that work?

3          MS. JOHNSTON:  Your Honor, I will be out of state,

4 but Ms. Glatfelter will handle that issue.

5          MR. LAWLOR:  Your Honor, I'm going to be sunning

6 in North Carolina on the 28th.

7          THE COURT:  Good for you.  That whole week?

8          MR. LAWLOR:  The whole week.

9          THE COURT:  Good for you.  All right.  How about

10 August 11?

11          MS. JOHNSTON:  That's fine with the government.

12          MS. WICKS:  It just depends on the time, Your

13 Honor.  I have a doctor's appointment that morning.

14          THE COURT:  That morning?

15          MS. WICKS:  Yeah.

16          THE COURT:  How about if I did it at two o'clock?

17          MS. WICKS:  That's fine.

18          THE COURT:  Would that be all right?  All right.

19 I'll put that down as an attorney status hearing, and

20 I'll have all parties present including the defendant.

21 If he has waived, we'll go through an appropriate

22 on-the-record inquiry about waiver.

23          Okay.  Now, let me talk about the paperwork that

24 needs to be done on this case.  Ms. Wicks, assuming that

25 you remain in the case or successor counsel comes in, I'm

1  going to want to have your best shot at why the

2  government is wrong on all the issues raised.  I don't

3  think that would really fully or fairly encompassed in

4  your motion to strike it which I'm denying, but I to want

5  to give you a chance to hit the issues in this case head

6  on.

7           Assuming that we are doing this sentencing on

8  October 29th, I should have whatever you're going to give

9  me on that -- how does this work?  If I get the response

10 from you or successor counsel on or before September 21,

11 and if the government wishes to reply it would do it by

12 October 9.  That work for everybody?

13          MS. JOHNSTON:  That works for me.

14          MS. WICKS:  That's fine.

15          THE COURT:  Let me review the bidding then.  We're

16 going to have an all day sentencing on October 29.  The

17 defense will file its opposition to the government's

18 sentencing memorandum by September 21.  The government

19 will file any reply by October 9, and we will have an

20 inquiry -- what was the date I gave the inquiry?

21          MS. JOHNSTON:  August 11, Your Honor.  August 11

22 at two o'clock for status.

23          THE COURT:  What was the date again?

24          MS. JOHNSTON:  August 11 at two o'clock.

25          THE COURT:  August 11.  Okay.  August 11 at two.

1  Okay.   August 11 at two for an attorney status hearing.

2          All right.  Anything further for today?  What I
3  will do is I'll take a recess, and Judge Schulze will be
4  with you shortly.

5          MS. JOHNSTON:  Your Honor, just one thing.  I know
6  in counsel's sentencing memo, or her objections -- the
7  defendant's objections to the presentence report, with
8  reference to the defendant's prior convictions, counsel
9  acknowledged that those were his prior convictions.  And
10  I ask this because we have fingerprint records and a
11  fingerprint examiner, if need be, to call at the time of
12  trial.  We did not give notice of him because the
13  representation in the memo was that the defendant agreed
14  those were his prior convictions.  If this he is going to
15  take a contrary position, we'll need notice so that we
16  can make sure we will have the appropriate witnesses
17  here.

18          THE COURT:  Will there be dispute as to that, Ms.
19  Wicks?

20          MS. WICKS:  Your Honor, for the record, there was
21  actually significant discovery provided by the government
22  prior to trial.  And consistent with that discovery,
23  we're not -- we're not disputing that issue.

24          MS. JOHNSTON:  That's fine, Your Honor.  Thank
25  you.

1        THE COURT:  All right.  If there is nothing

2  further, then I will ask Judge Schulze to come -- I

3  understand that she was dealing with a search warrant, so

4  it may not be instantaneous.

5        I don't think the government needs to stay here

6  for this.  It's just appointing Mr. Lawlor.

7        MS. JOHNSTON:  That's fine.  Then we will promptly

8  leave.  Thank you, Your Honor.

9        THE COURT:  If for some reason she needs you, she

10 can call you back.  Thank you.  We'll see you in October.

11              (Off the record at 10:42 a.m.)

12                        **CERTIFICATE**

13       Tracy Rae Dunlap, RPR, CRR, an Official Court
   Reporter for the United States District Court of
14 Maryland, do hereby certify that I reported, by machine
   shorthand, the proceedings had in the case of UNITED
15 STATES OF AMERICA versus OPIO DARRIA MOORE, Criminal
   Action Number RWT-08-203 on July 1, 2009.
16
         In witness whereof, I have hereto subscribed my
17 name, this 5th day of June 2010.


18
                    _____/S/_____
19                  TRACY RAE DUNLAP, RPR, CRR
                    OFFICIAL COURT REPORTER
20

21

22

23

24

25