IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
|    *Plaintiff*, : | |
| : | Criminal. No. 08-0203-RWT |
| v. : | Civil Action No. 13-3589-RWT |
| : | |
| OPIO D. MOORE, : | |
|    *Defendant.* : | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE AND SET ASIDE SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Petitioner Opio Moore, through counsel, files this Memorandum of Law in Support of his Motion to Vacate and Set Aside Sentence Pursuant to 28 U.S.C. § 2255.

**I.  APPRENDI'S REQUIREMENT THAT FACTS RESULTING IN ENHANCED SENTENCING MUST BE PROVED BEYOND A REASONABLE DOUBT SHOULD APPLY RETROACTIVELY TO INCREASED MANDATORY MINIMUM SENTENCES BASED ON CONTROVERTED FACTS PROVED ONLY BY A PREPONDERANCE OF THE EVIDENCE**

Mr. Moore's sentence violates the Sixth Amendment, and due to that violation, he was sentenced to serve the remainder of his natural life in prison for being a felon in possession of ammunition. His sentence would never have been imposed without the judicial fact finding that took place at his sentencing hearing. First, the Court

found that Mr. Moore was an Armed Career Criminal based on judicial fact finding about the number and nature of Moore's prior convictions. Second, the Court supported a variant sentence using facts that were never put before the jury, since they were wholly unrelated to the conviction. Both of these fact finding processes violated the Sixth Amendment. *United States v. Alleyne*, 133 S.Ct. 2151 (2013).

The Supreme Court has held, in a combination of decisions, that rules related to the reasonable doubt standard apply retroactively. Under the *Teague* test, reasonable doubt is a fundamental interest of transcending value necessary to the accuracy of criminal proceedings.

    1.    <u>Alleyne v. United States is a new rule of constitutional law.</u>

A Supreme Court decision announces a "new rule" if it "breaks new ground or imposes a new obligation on the states or the Federal Government," *Teague v. Lane*, 489 U.S. 288 (1989), meaning that the "result was not dictated by precedent existing at the time defendant's conviction became final." <u>Id.</u> Prior to *Alleyne*, the prevailing law on the issue of whether a jury must find factors raising a statutory maximum sentence had been articulated in *Harris v. United States*, 536 U.S. 545 (2002). The Supreme Court expressly overruled *Harris* in deciding *Alleyne*. As such, *Alleyne* announced a new rule. See *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (holding that *Alleyne* announced a new rule of law).

2

### 2. The new rule announced in Alleyne is among the express exceptions to the rules against non-retroactivity.

Generally, a new rule can be applied retroactively to cases on collateral review only if one of two exceptions applies. *Teague v. Lane*, 489 U.S. 288 (1989). First, a new rule may be applied retroactively if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law - making authority to proscribe." *Id.* at 307. Second, a new rule may be applied "if it requires the observance of those procedures that ... are implicit in the concept of ordered liberty." These instances are limited to those rules which announce "watershed rules of criminal procedure." *Id.* at 312. A watershed rule is one that implicates the "fundamental fairness and accuracy of the criminal proceeding." *Graham v. Collins*, 506 U.S. 461, 478 (1993). In other words, for a new rule to be given retroactive affect under *Teague*'s second prong, it must affect the fundamental ability of the justice system to arrive at a reliable result.

*Alleyne* is such a watershed rule, in that it holds that any time a criminal defendant is exposed to a range of punishment not otherwise authorized by the facts found by a jury beyond a reasonable doubt, that result is not sufficiently accurate and reliable to satisfy the demands of the Due Process Clause and the Sixth Amendment.

>    3.   **Multiple holdings of the Supreme Court logically dictate the retroactivity of Alleyne.**

By its terms, 28 U.S.C. §2255(h)(2) applies only when the new rule has been "made retroactive to cases on collateral review by the Supreme Court." Whether a case has been found to be retroactive by the Supreme Court can be determined in two ways. The Supreme Court can directly state it. *Tyler v. Cain*, 533 U.S. 656, 663 (2001). Mr. Moore concedes that the Supreme Court has not expressly stated that *Alleyne* is retroactive. As Justice O'Connor indicated in her concurring opinion in *Tyler*, however, "a single case that expressly holds a rule to be retroactive is not a *sine qua non* for the satisfaction of this statutory provision." *Id.* at 669. The Supreme Court may also make a new rule

> retroactive through multiple holdings that logically dictate the retroactivity of the new rule....[I]f we hold in Case One that a particular type of rule applies retroactively to cases on collateral review and hold in Case Two that a given rule is of that particular type, then it necessarily flows that the given rule applies retroactively to cases on collateral review.

*Id.*

In this case, the Supreme Court has determined that the "particular type" of case implicated by *Alleyne* does apply retroactively. *Alleyne* reinforces the bedrock principle that the Sixth Amendment right to trial by jury and the Due Process Clause of the Fifth Amendment require that criminal defendants be convicted and punished

4

based only on elements proven to a jury beyond a reasonable doubt. *Alleyne*, 133 S.Ct. at 2156. That determination rested squarely on the Court's decision in *In re Winship*, 397 U.S. 358 (1970). In invalidating a standard whereby elements constituting a juvenile offense needed to be proven by a preponderance of the evidence, the Court explained that the "requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation." *Id.* at 361. The Court reiterated this principle in *Mullaney v. Wilbur*, 421 U.S. 684 (1975). In that case, the Court invalidated a statutory scheme whereby the State was relieved altogether of the burden of proving the defendant's state of mind, and instead shifted the burden to the defendant. *Id.* at 701.

The Supreme Court afforded retroactive effect to both *Winship* and *Mullaney*. *See Ivan v. City of New York*, 407 U.S. 203 (1971); *Hankerson v. North Carolina*, 432 U.S. 233 (1977). In so doing, the Court reiterated the fundamental importance of *Winship*'s holding that "no man shall lose his liberty unless the Government has borne the burden of . . . convincing the fact finder of his guilt." *Ivan*, 407 U.S. at 205 (quoting *Winship*, 397 U.S. at 363-364). In finding the holding in *Mullaney* retroactive, the Supreme Court underscored that the principle role of the reasonable doubt standard in determining the elements of a crime is "substantial." *Hankerson,* 432 U.S. at 244. *Alleyne* vindicates the very same principles. Any element that binds

a judge to deprive a criminal defendant of his liberty beyond what he would be subjected to had that element not be found, must be proved beyond a reasonable doubt. Failing to do so subjects criminal defendants to a sentence and correlated loss of liberty for conduct the jury did not find the defendant committed. Such a result is untenable based on the same principles made retroactive by *Ivan* and *Hankerson*. Under the *Tyler* approach, then, *Alleyne*'s retroactivity is "necessarily dictate[d]" by an earlier decision of the Supreme Court. *Tyler*, 533 U.S. at 666.

## II.  THE GOVERNMENT VIOLATED MOORE'S DUE PROCESS RIGHTS WHEN IT FAILED TO TURN OVER IMPEACHING AND EXCULPATORY EVIDENCE

The government violated Mr. Moore's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding from the defense critical exculpatory and impeachment evidence pertaining to Inmate One.  Inmate One testified at Mr. Moore's federal trial in the District of Columbia and revealed there information, previously unbeknownst to Moore, about mental health issues he suffered from and criminal activity he had engaged in (aside from the murders for hire he admitted to during his testimony in this Court).   With this Memorandum of Law, Mr. Moore has filed a request for discovery seeking additional information about Inmate One.  Mr. Moore requests that this Court grant him that discovery and permit him to supplement this Memorandum of Law if additional *Brady* information is unearthed.  Further,

6

under separate cover, Mr. Moore, will file the testimony of Inmate One from Moore's case in the District of Columbia.

To prevail on a *Brady* violation, Petitioner must show that:

(1) the evidence at issue must be favorable to the defendant, whether directly exculpatory or of impeachment value; (2) it must have been suppressed by the state, whether willfully or inadvertently; and (3) it must be material.

*Spicer v. Roxbury*, 194 F.3d 547, 555 (4th Cir. 1999) (citing *Strickler v. Green*, 527 U.S. 263, 280 (1999)).

Evidence is material if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *See United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion). In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Court noted the following regarding materiality:

Bagley's touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.

*Id.* at 434 (internal quotations and citations omitted). *See also United States v. Martinez-Medina*, 279 F.3d 105, 126 (1st Cir. 2002) (noting that confidence in the outcome of a trial is particularly doubtful when the withheld evidence impeaches a

witness whose "testimony is uncorroborated and essential to the conviction").

### III. TRIAL, SENTENCING AND APPELLATE COUNSEL WERE INEFFECTIVE

Pursuant to the two prong test in *Strickland v. Washington*, 466 U.S. 668 (1984), Petitioner must show that counsel's performance was deficient, and second, that counsel's deficient performance prejudiced the defense. To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Prejudice is shown if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. *See also Rose v. Lee*, 252 F.3d 676 (4th Cir. 2001) (applying *Strickland)*.

Trial, sentencing and appellate counsel were ineffective in the following respects:

1. Trial counsel was ineffective in failing to conduct an adequate investigation in this case and in failing to call witnesses who would have benefitted Mr. Moore's defense. For example, Randolph Thomas was available as a witness for the defense but was not interviewed by trial counsel.

2. Sentencing and appellate counsel were ineffective in failing to argue that the Armed Career Criminal designation did not apply to Mr. Moore as two of his prior

convictions were incurred at the same time.

## CONCLUSION

Based on the foregoing, the Petitioner prays that this Court will grant his Motion to Vacate and Set Aside Sentence Pursuant to 28 U.S.C. § 2255 and order a new trial or a new sentencing hearing.

Respectfully submitted,

_____/s_____
Teresa Whalen
801 Wayne Avenue
Suite 400
Silver Spring, Maryland 20910
301-588-1980

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2014, a copy of the foregoing was delivered to the Office of the Unites States Attorney via electronic filing.

___/s_____
Teresa Whalen