IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **OPIO DIARRA MOORE,** | * | |
| *Petitioner*, | * | |
| v. | * | Civil Action No. RWT-13-3589 |
| | | Criminal No. RWT-08-0203 |
| **UNITED STATES OF AMERICA,** | * | |
| *Respondent*. | * | |

## MEMORANDUM OPINION

Pending is Petitioner Opio Diarra Moore's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence, as well as the Government's Motion to Dismiss. This Court has reviewed the papers and heard the parties' oral arguments. For the reasons stated below, the Court will deny Petitioner's Motion and grant the Government's Motion to Dismiss.

### BACKGROUND

#### I. The Offense

On August 30, 2006, a Federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") task force, conducting surveillance of the Realco gun store in Forestville, Maryland, observed Moore, a convicted felon, in possession of ammunition after Moore engaged in a straw transaction. ECF No. 180, at 3–4. A grand jury returned a two-count indictment charging Moore with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and conspiracy to commit said offense in violation of 18 U.S.C. § 371. ECF No. 1. After a four-day trial, a jury convicted Moore on both counts on December 5, 2008. ECF No. 43.

## II.  Sentencing and Post-Conviction Procedure

In Moore's presentence report, the probation officer determined that Moore was an armed career criminal pursuant to U.S.S.G. 4B1.4. Consequently, he was subject to an enhanced sentence for count one—a minimum term of fifteen years imprisonment and a maximum term of life. 18 U.S.C. § 924(e). Under the Sentencing Guidelines, the advisory range for imprisonment was 188 to 235 months based on an offense level of 33 and criminal history category of IV. However, the Government moved for an upward variance, arguing that Moore should be sentenced to life imprisonment based on the nature and circumstances of his offense, his behavior while previously incarcerated,[1] and his alleged post-release involvement in murders and other uncharged offenses.[2] ECF No. 68 (sealed).

At an all-day sentencing hearing, the Government presented evidence and testimony in support of its recommendation of a life sentence. ECF No. 146 (sealed). This evidence included the testimony of Inmate One,[3] who testified that Moore had been hired to commit at least two murders, ECF No. 180 at 12–14, and Inmate Two, who testified that Moore was involved in numerous burglaries and armed robberies, ECF No. 180, at 15–16. This testimony was corroborated by law enforcement testimony and evidence. ECF No. 180, at 15–16.

The Court found that the Government had proved Moore's involvement in the criminal incidents by a preponderance of the evidence, ECF No. 146, at 332: 20–24, and in consideration

---

[1] While incarcerated for federal drug convictions, Moore was found guilty of at least ten infractions involving violence or threats of violence, resulting in multiple transfers, ultimately to the Bureau of Prisons' ("BOP") maximum security facility in Florence, Colorado. ECF No. 68, at 14–17. The assaultive incidents included two stabbings and numerous other physical assaults, which continued while Moore was in the maximum security facility. *Id.*

[2] The Government presented evidence that Moore was an accomplice to the murder of armored car courier Jason Schwindler and involved in the murder of Carlos Webb, one of Moore's acquaintances. *Id.* at 17–21; ECF No. 146 at 258–66. The Government also presented evidence that Moore attempted to break out of prison the individual ultimately convicted of the Schwindler murder. ECF No. 68, at 21–23.

[3] Inmate One is referenced by his name in the transcripts and the exhibits.

of the 18 U.S.C. § 3553(a) factors, imposed the statutory maximum sentence for both counts—life imprisonment for possession of ammunition and sixty months for conspiracy to possess ammunition. *Id.* at 341–45. Moore appealed to the Fourth Circuit, which upheld the conviction and sentence. *United States v. Opio Moore*, 484 Fed. Appx. 758 (4th Cir. 2012). He then petitioned the Supreme Court for *certiorari*, which was denied. *Opio Moore v. United States*, 133 S. Ct. 676 (2012). His appeals exhausted, Moore filed a petition for relief under 28 U.S.C. § 2255. ECF No. 151.

### III. The Petition

Moore initially filed his § 2255 petition *pro se.* In his petition, he alleged ineffective assistance of counsel, violations of the Fifth and Sixth Amendments, *Brady/Giglio* violations and erroneous sentencing calculations. ECF No. 151. Notably, his brief *Brady/Giglio* allegations related to witness impeachment and included almost no specific details as to what was allegedly withheld. *Id.* at ¶ 13. On March 11, 2014, Attorney Theresa Whalen entered her appearance, ECF No. 155, and filed an amended memorandum in support of Moore's petition, ECF No. 167, and a Motion for Discovery, ECF No. 168. The amended memorandum expanded Moore's *Brady* allegations slightly by adding that the withheld information related to the mental health issues and criminal history of a sentencing witness, Inmate One.[4] ECF No. 167, at 6. Moore later filed almost 400 pages of unannotated trial transcripts in support of his *Brady* assertions, ECF No. 170 (sealed), but did not cite to the transcripts in his amended memorandum or include anything beyond a cursory assertion of relevance. ECF No. 167, at 6. The Court took the unusual step of scheduling a hearing on the motions. The evening before the hearing, Moore's

---

[4] In his motion for discovery, Moore offered no additional clarity into the alleged *Brady* violations, but rather included a laundry list of requests for information about Inmate One, Inmate Two and various investigations. ECF No. 168, at ¶ 5.

counsel filed over a hundred pages of new documents in support of his *Brady* claim. ECF No. 185 (sealed).

## STANDARD OF REVIEW

To prevail under 28 U.S.C. § 2255(a), a prisoner in custody must show by a preponderance of the evidence "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A habeas petition must "state facts that point to a real possibility of constitutional error." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (internal quotation marks omitted)).

## ANALYSIS

Moore presents three primary arguments in support of his petition: (1) that the Government violated his due process rights when it failed to turn over *Brady* material; (2) that his sentence violates the Sixth Amendment requirement that any fact that raises the statutory maximum or minimum penalty for a crime must be submitted to a jury, and proved beyond a reasonable doubt; and (3) that he was denied his Sixth Amendment right to effective assistance of counsel. ECF Nos. 151, 167. For the reasons described in detail below, all three arguments fail.

## I. Moore's *Brady* Claim is Procedurally Defaulted and Lacks Merit Because He Fails to Establish the Materiality of the Alleged Undisclosed Information

Moore claims that the Government violated his due process rights when it failed to turn over *Brady* material. ECF Nos. 151, 167. Specifically, Moore alleges that the Government withheld "critical exculpatory and impeachment evidence" pertaining to Inmate One. ECF No. 167. This evidence—related to Inmate One's mental health and criminal history—allegedly came to Moore's attention for the first time in June 2012, when Inmate One testified as a witness for the Government in a federal case against Moore in the District of Columbia. *Id.* At Moore's sentencing before this Court, the Government had originally provided several of Inmate One's plea agreements, his criminal history and detailed records from detention facilities regarding Inmate One's mental health and disciplinary complaints. ECF No. 180. In supplemental filings, Moore submitted the transcript from Inmate One's testimony at his District of Columbia trial, several FBI source reports about Inmate One, a transcript of the testimony of a witness to a murder Inmate One alleged that Moore committed, and a letter from the U.S. Department of Justice listing, *inter alia*, payments the Government paid to move Inmate One's family. *See* ECF Nos. 170 & 185-1 to -9. A review of the District of Columbia trial transcript reveals a few different details and, perhaps, greater specificity about Inmate One's mental health, criminal history and drug use. The FBI reports and witness transcript indicate some minor inconsistencies in Inmate One's statements to the Government. In total, however, the documents are insufficient to establish a *Brady* violation because the essential facts about Inmate One's criminal history, mental health and disciplinary complaints were communicated to Moore prior to sentencing and Moore's counsel effectively cross-examined Inmate One with the use of the documents provided by the Government. It is highly unlikely that the outcome of Moore's

sentencing would have been different had the Government turned over the additional documents to Moore.[5] In short, the additional documents were little more than icing on the cake already provided to Moore before his sentencing.

### a. Moore's *Brady* Claim is Procedurally Defaulted Because He Cannot Show Prejudice

As a general rule, claims not raised on direct appeal are procedurally defaulted on habeas review. *United States v. Frady*, 456 U.S. 152, 165 (1982). For constitutional claims, a petitioner may surmount procedural default if he can demonstrate both cause and prejudice or actual innocence.[6] *See United States v. Pettiford*, 612 F.3d 270, 275 (4th Cir. 2010); *Bousely v. United States*, 523 U.S. 614, 621 (1998). Cause "turn[s] on whether the prisoner can show that some objective factor external to the defense" impeded compliance with the procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Furthermore, a defendant can only establish actual prejudice when "the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray*, 477 U.S. at 494). The first hurdle, cause, is overcome; Moore did not raise the *Brady* claim in his direct appeal because he was not aware of the additional documents the Government did not disclose at the time of his sentencing. However, Moore cannot overcome the second hurdle because ultimately his *Brady* claim is meritless; since he has no claim, he fails to show that he was actually disadvantaged or prejudiced by any error.

---

[5] Even if Moore could point to a favorable piece of undisclosed information, Moore would also have to demonstrate that the prosecution knew about the information yet failed to disclose it—his § 2255 motion and memorandum in support allege this generally without any factual support. *See* ECF Nos. 151, 167.

[6] Moore does not allege actual innocence.

6

### b. Moore's *Brady* Claim is Meritless Because the Withheld Evidence was Immaterial

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 1194 at 87. To establish a *Brady* violation, a defendant must show (1) that the undisclosed information was favorable, either because it was exculpatory or because it was impeaching; (2) that the information was material; and (3) that the prosecution knew about the evidence and failed to disclose it. *United States v. Wilson,* 624 F.3d 640, 661 (4th Cir. 2010); *see also Giglio v. United States,* 405 U.S. 150, 153–54 (1972) (explaining that material impeachment information is encompassed within the *Brady* rule). Evidence is material if there is a "reasonable probability that its disclosure would have produced a different result." *United States v. Bartko,* 728 F.3d 327 at 340. This "reasonable probability" standard is satisfied if "the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." *Id*. In particular, impeachment evidence may be material when the witness in question "supplied the only evidence of an essential element of the offense," especially if the undisclosed evidence was the only significant impeachment material. *Id.* at 339.

At Moore's District of Columbia trial, direct and cross-examination of Inmate One revealed information about his history that would affect his credibility. *See* ECF No. 170-1, at 67–76; 170-2, at 11–13, 27–32. For example, Inmate One admitted extensive criminal behavior—including committing 20–30 armed robberies—in order to maintain drug trafficking business and his personal drug habit. ECF No. 170-2, at 27–32. Regarding his mental health, Inmate One stated that he was diagnosed with "schizophrenia, bipolar," which caused him to

7

experience hallucinations in 2000. ECF No. 170-2, at 11–13. Moore appears to argue that the Government had knowledge of these details and failed to disclose them prior to his sentencing in this case. *See* ECF No. 167, at 6–7. However, prior to Moore's sentencing, the Government provided ample impeachment evidence about Inmate One—his criminal history, plea agreement with the Eastern District of Virginia, and correctional records referencing his mental health and drug history—all within the scope of what Inmate One testified to in the District of Columbia trial. *See* ECF No. 180-1. Related to mental health, the Government disclosed that Inmate One reported auditory hallucinations during at least two periods of incarceration—around 1999 and again in late 2008—and received treatment for bipolar disorder and schizophrenia. ECF No. 180-1. He participated in outpatient mental health services including taking medication for bipolar disorder from approximately 2003–2005. *Id.* The Government also reported that Inmate One had an extensive history of drug use, including habitual heroin use from approximately 1998–2006, with use of as much as four grams of heroin daily between 2003 and 2006. *Id.* Moore also received information about Inmate One's lengthy criminal history, which includes various drug, firearm and assault charges. *Id.* Armed with these Government disclosures, counsel for Moore cross-examined Inmate One extensively about his criminal activities and mental health issues. ECF No. 180-2, at 384–86; 408–09.

Comparing the Government's pre-sentencing disclosures about Inmate One to Inmate One's testimony during the District of Columbia trial, the Government has met its burden under *Brady* regarding information about Inmate One's mental health and drug use. *See United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990) ("[W]here the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have

8

looked, a defendant is not entitled to the benefit of the *Brady* doctrine."). Impeachment evidence is not material if it is "cumulative of evidence of bias or partiality already presented and thus would have provided only marginal additional support for the defense." *Bartko*, 728 F.3d at 339. Here, the Government provided ample information to defense counsel prior to sentencing about Inmate One's mental health and criminal history, which could have been used for impeachment purposes, and was, in fact, used during Counsel's cross-examination of him. *See* ECF Nos. 180-1, 180-2.

Moore also claims that the Government failed to provide information that would tend to show Inmate One had actually committed the murders and attempted murders Inmate One claimed Moore had committed, or at the very least that Inmate One's information was unreliable. ECF No. 180. In the newly submitted documents, Inmate One makes contradictory statements regarding who committed the crimes. *Compare* ECF No. 185-4, at 2 (reporting that Inmate One stated a murder was committed by a third party), *with* ECF No. 185-1 (reporting that Inmate One stated the same murder was committed by a third party and Moore). In another document, a witness describes the assailant in one of the murders in terms that resemble Inmate One more than Moore. ECF No. 185-2, at 20:17–25 (describing the assailant as having light skin and a moustache). There is also evidence that the Government paid Inmate One's family to relocate and that Inmate One provided additional information on unrelated issues in an attempt to curry favor. ECF Nos. 185-8 & -9. Undoubtedly, this material falls under *Brady* either because it is exculpatory or because it tends to show bias. *See Giglio*, 405 U.S. at 154. Moore's *Brady* claim fails, however, because the evidence is immaterial; it would not have changed the outcome of Moore's sentence.

With minor exceptions, Moore's counsel at sentencing was generally aware of the information contained in the new documents. In his Motion to Continue Sentencing Hearing filed April 22, 2010, Moore argued that his counsel needed additional time to investigate because there was a viable suspect other than Moore for the murder and witnesses to the attempted murders. ECF No. 95, at ¶ 9 (sealed). Moore also requested more time to review the Government's disclosures, which included "police notes from interview(s) with [Inmate One]." *Id.* at ¶ 11. To the extent that the new documents tend to show Inmate One is untruthful or changes his statements, this fact was sufficiently covered in cross-examination. Inmate One made several inconsistent statements regarding whether he sent a letter and why he was testifying. ECF No. 180-2, at 173:4–174:15 (sealed) (transcript in which Inmate One initially states he wrote a letter then denies that he wrote or signed the letter); *id.* at 141:20–142:10 (transcript in which Inmate One states he is testifying because he is "tired" then indicates he is testifying for a reduced sentence). To the extent the new documents show Inmate One is a violent individual, Inmate One admitted on cross examination to brokering several murders and assaulting his girlfriend. *Id.* at 154: 23–25; *id.* at 158:5–25.

While it is true that Moore's counsel was not able to cross examine Inmate One on the specifics of these new documents, the cross examination amply demonstrated that Inmate One had a motive to testify favorably for the government and admitted to having committed several violent acts. Considering the testimony alone, there was already substantial reason for the Court to question Inmate One's veracity, but Inmate One's testimony was corroborated by other evidence. The Government's sentencing presentation did not hinge on Inmate One's testimony alone, but rather consisted of testimony from another inmate and from law enforcement, as well

as other documents, that provided a plethora of Moore's criminal activity. None of the new documents definitively proved that Moore was not involved in the criminal activity the Government presented and that this Court found the Government proved by a preponderance of the evidence. It is thus highly unlikely Moore's sentence would have been different had the Government provided the new documents. Moore has failed to show prejudice and cannot show a *Brady* violation.

   II.   *Alleyne* **Creates No Valid Ground for Relief Because Neither the Fact of a Prior Conviction, Nor Facts used to Guide the Court's Discretion in Sentencing Need to be Submitted to a Jury**

Moore argues that his sentence violates the Sixth Amendment requirement that any fact that raises the statutory maximum or minimum penalty for a crime must be "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (mandatory maximums); *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013) (mandatory minimums). Specifically, Moore argues that *Alleyne* announced a new rule of constitutional law that, applied to his case, would show that the Court erred by: (1) finding that Moore was an Armed Career Criminal based on judicial fact finding about the number and nature of Moore's prior convictions; and (2) supporting a variant sentence using facts that were never put before a jury. ECF No. 167. Neither of Moore's assertions is a valid *Alleyne* claim.[7]

Because an ACCA enhancement increases both a defendant's statutory maximum and mandatory minimum penalties, the Sixth Amendment would seem to require the Government to

---

[7] Both Moore and the Government analyze whether *Alleyne* would apply retroactively on collateral review under the test outlined in *Teague v. Lane. See* 489 U.S. 288 (1989). This argument is largely irrelevant as Moore has not raised a proper *Alleyne* claim. Further, every circuit to have considered the issue of whether *Alleyne* applies retroactively on collateral review has held that it does not. *See Hughes v. United States,* 770 F.3d 814, 818–19 (9th Cir. 2014); *Jeanty v. Warden, FCI-Miami*, 757 F.3d 1283, 1286 (11th Cir. 2014); *In re Mazzio,* 756 F.3d 487, 489–91 (6th Cir. 2014); *United States v. Winkelman,* 746 F.3d 134, 136 (3d Cir. 2014); *In re Kemper,* 735 F.3d 211, 212 (5th Cir. 2013); *United States v. Redd,* 735 F.3d 88, 91–92 (2d Cir. 2013); *In re Payne,* 733 F.3d 1027, 1029 (10th Cir. 2013); *Simpson v. United States,* 721 F.3d 875, 876 (7th Cir. 2013).

prove an ACCA predicate felony beyond a reasonable doubt. *United States v. McDowell*, 745 F.3d 115, 123 (4th Cir. 2014). The Supreme Court, however, has recognized an exception to the general Sixth Amendment rule: a jury need not find the "fact of a prior conviction" beyond a reasonable doubt. *Id.* (quoting *Apprendi,* 530 U.S. at 490) (internal quotation marks omitted). Instead, the Supreme Court has held that the Sixth Amendment permits a judge to find the fact of a prior conviction, even if this fact raises the statutory maximum or minimum penalty for the current offense. *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998).

Moore's claim—that the prior convictions used in furtherance of an ACCA enhancement should have been submitted to a jury and proved beyond a reasonable doubt—is simply inaccurate under *Almendarez-Torres*. *See id.*; *see also, McDowell*, 745 F.3d at 115 (explaining that the *Almendarez-Torres* holding remains good law and has not been overruled by *Apprendi* or *Alleyne*). Moore raised the same argument at his sentencing and the Court rejected it. ECF No. 146, at 38-40. The Fourth Circuit also rejected this argument when it affirmed Moore's sentence as substantively and procedurally valid. ECF No. 147-1, at 12–18. *Alleyne* adds no new ground on which Moore can request relief.

*Alleyne* is also irrelevant to Moore's second claim—that the Court supported a variant sentence using facts that were never put before a jury. ECF No. 167, at 2. *Alleyne* applies to facts that increase a mandatory minimum penalty, and specifically preserved the distinction, for constitutional purposes, between facts that establish the range in which a district court may lawfully impose a sentence and facts that inform the court's specific sentence within that lawful range. *See* 133 S. Ct. at 2163. Under *Alleyne*, "fact-finding used to guide judicial discretion in selecting a punishment within limits fixed by law" does not offend the Sixth Amendment. *Id.* at

12

2161 n.2; *see United States v. Umaña*, 750 F.3d 320 (4th Cir. 2014). Here, Moore's mandatory minimum was increased pursuant to his designation as an Armed Career Criminal, which, based on prior convictions, created a sentencing range of fifteen years to life imprisonment. *See* 18 U.S.C. § 924(e). Moore was sentenced within this range, ECF No. 121, and *Alleyne* has no bearing on the Court's fact-finding in imposing this sentence.

### III. Moore's Ineffective Assistance of Counsel Claims Fail Both Prongs of the *Strickland* Test

In his § 2255 motion and subsequent memorandum in support, ECF Nos. 151, 167, Moore asserts that:

(1) Trial counsel failed to adequately investigate all aspects of the prosecution's case and/or interview appropriately all relevant witnesses on the government's witness list and/or presented by the government, including but not limited to Randolph Thomas;

(2) Trial counsel failed adequately to investigate all avenues and lines of defense, and failed to present critical evidence;

(3) Trial counsel failed adequately to investigate, interview, consult with, and prepare witnesses that could have been called to testify at trial;

(4) Trial counsel failed properly and effectively to examine, and present evidence through defense witnesses who were or who could have been called to testify at trial;

(5) Petitioner was denied his right to the effective assistance of appellate counsel throughout all phases of the appeals process, in violation of his rights as guaranteed under Fourth, Fifth, Sixth, Eighth and Fourteenth amendments to the U.S. Constitution;

(6) Appellate counsel was ineffective for failing to present to the Court of Appeals viable issues including but not limited to, claims of trial court error, and ineffective assistance of counsel claims raised herein; and

(7) Trial, sentencing and appellate counsel were ineffective for failing to properly investigate Armed Career Criminal Act predicate offenses and for failing to argue that the ACCA designation did not apply to Moore as two of his prior convictions were incurred at the same time.

In evaluating such claims of ineffective assistance of counsel, courts apply the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that counsel's presentation fell "below an objective standard of reasonableness." *Id.* at 668. Second, a petitioner must show there is a reasonable probability that, absent counsel's errors, the outcome of the case would have been different. *Id.* at 669. When evaluating counsel's performance, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

### A. Moore's Conclusory Claims (1–6) Fail to Set Forth a Sufficient Factual Basis to Entitle Him to Relief Under Section 2255

Claims One through Six fail to satisfy either prong of *Strickland* because they are vague and without factual support. Under Rule 2(b) of the Rules Governing Section 2255 Motions, a Petitioner must "state the facts supporting each ground." Conclusory and vague allegations without factual specifics cannot entitle a petitioner to relief. *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir.1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."); *see also United States v. Hustead*, Crim. No. WMN-09-622, Civ. No. WMN-12-3618, 2013 U.S. Dist. WL 3984613, at *2 (D. Md. July 31, 2013) ("This type

14

of vague, speculative, or conclusory allegations . . . clearly does not suffice to present a claim under § 2255."); *Bey v. United States*, Civ. No. RWT-11-3238, 2013 U.S. Dist. WL 715148, at *4 (D. Md. Feb. 25, 2013) ("The conclusory nature of [petitioner's] argument alone is sufficient for the Court to find that it fails to show that her counsel rendered ineffective assistance."). Here, Moore generally claims that counsel failed to adequately investigate and prepare a defense, but offers no specificity about how counsel was inadequate, what should have or could have been discovered, or how it would have assisted his defense. Similarly, he claims that counsel failed to examine and present critical evidence without specifying what evidence or what it would have revealed. Moore claims that counsel failed to interview Randolph Thomas,[8] but does not state what information would have been revealed. His subsequent memorandum in support offers no further detail, and thus there are no grounds on which the Court can find that counsel's presentation fell below an objective standard of reasonableness, or that but for counsel's performance, the outcome at trial, sentencing or appeal would have been different.

---

[8] At trial, Alvin Jackson testified that Randolph Thomas ("Dink") was present at the convenience store where his mother passed the ammunition to Moore in the parking lot, and that he observed Dink in Moore's car. ECF No. 135 at 56–57. This testimony was in conflict with Jackson's testimony to the grand jury, where he stated that his mother told him to testify that Dink was in Moore's car when in fact, Dink was not. *Id.* at 97: 6–20. In evaluating the reasonableness of counsel's decision not to call a witness the Court "must indulge a strong presumption . . . that under the circumstances, the challenged action might be considered sound trial strategy." *United States v. Terry*, 366 F. 3d 312, 316 (4th Cir. 2004) (quoting *Strickland* 466 U.S. at 687) (internal quotation marks omitted). The difficulty in overcoming this presumption is greater here, given that "the decision to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and one to which [courts] must afford enormous deference." *Id*. at 316. Moore offers no information to allow this Court to overcome the strong presumption that not calling Randolph Thomas as a witness was a sound trial strategy.

### B. Counsel Cannot Have Been Ineffective for Failing to Raise Moore's Armed Career Criminal Claim (7) Because it is Without Merit

Moore's final claim, that trial and appellate counsel erred in failing to challenge his designation as an Armed Career Criminal, lacks merit.[9] Counsel's representation cannot be constitutionally deficient for failing to assert legally meritless claims. *See Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (holding that counsel was under no duty to make a meritless motion). Moore was properly classified as an Armed Career Criminal because at the time of the instant offense, he had three prior convictions for serious drug offenses committed on occasions different than one another. 18 U.S.C. § 924(e). Moore asserts that two of his prior convictions in the Circuit Court for the City of Alexandria, Virginia—Distribution of Cocaine and Possession with Intent to Distribute Cocaine—were incurred at the same time. This is inaccurate. In *United States v. Letterlough*, the Fourth Circuit held that two different drug transactions, conducted less than two hours apart at the same location and with the same undercover officer, were properly counted as separate convictions under 18 U.S.C. § 924(e) because they were distinct and independent transactions regardless of whether they were a part of a continuing drug trafficking venture. 63 F.3d 332, 337 (1995). Here, Moore's distribution charge was based on conduct occurring March 18, 1991, and the possession charge, April 1, 1991. In light of *Letterlough*, Moore's two drug offenses, occurring almost two weeks apart, were clearly committed on different occasions. Moore was thus properly classified as an Armed Career Criminal.

---

[9] Any direct challenge to Moore's designation as an armed career criminal is procedurally barred because this issue was addressed on direct appeal, and because Moore has not established cause, prejudice, or actual innocence in order to prevail over his procedural default. *See United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Mikalajunas*, 186 F.3d 490, 492–93, 495–96 (4th Cir. 1999). Thus, the Court need not address the merits of Moore's ACCA status, but only whether counsel acted reasonably in challenging that status.

## IV. Moore is Not Entitled to Discovery Because He Fails to Demonstrate Good Cause

In his motion for discovery, Moore requests production of a large quantity of information relating to his sentencing from the Government and law enforcement agencies, including all the information about a number of murders, attempted murders, and witnesses. ECF No. 168. Moore does not indicate what these documents would show, but states that the information is "needed to fully investigate" avenues of investigation not undertaken by trial counsel and potential *Brady*/*Giglio* information. *Id.* at 7. Moore is not entitled to discovery.

Discovery in connection with a habeas petition is only granted in limited circumstances where "good cause" is shown. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also* Rule 6 of the Rules Governing Section 2255 Proceedings. Good cause is shown if the petitioner makes "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969). There is good cause for discovery when a habeas petition establishes a prima facie case for relief, *United States v. Roane*, 378 F.3d 382, 403 (4th Cir. 2004), but a defendant may not use discovery as a "fishing expedition" to go through the Government's files in search of evidence to support bare allegations. *See United States v. Wilson*, 901 F.2d 378, 381 (4th Cir. 1990).

Here, the reason that Moore proffers for producing the documents—essentially, to find evidence to support his claims—does not constitute good cause, and appears to be nothing more than a fishing expedition. Moore bears the burden of demonstrating good cause, *see Bracy*, 520 U.S. at 908–09, and has failed to meet this burden. Aside from speculation, Moore offers no reason for this Court to believe that facts uncovered during discovery would entitle him to relief.

Further, as previously discussed, his § 2255 presents no valid grounds for relief. Finally, as noted by the Government, Moore was tried in the District of Columbia for conduct that included the murder and attempted murders that Inmate One testified about during his sentencing in this case. ECF No. 180 at 35. His counsel, who represented him in the District of Columbia case, had all of the discovery in that case. *Id.* Even with that discovery, Moore is unable to establish specific grounds that would trigger the Court's discretion to grant leave for discovery. Accordingly, Moore's motion for discovery should be denied.

## CERTIFICATE OF APPEALABILITY

Moore may not appeal this Court's denial of relief under § 2255 unless it issues a certificate of appealability. *See* 28 U.S.C. § 2253(c) (2012); *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). A certificate of appealability will not issue unless the Defendant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2012); *Miller-El*, 537 U.S. at 337. Under this standard, Defendant must show that "jurists of reason could have resolved this claim differently." *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) (citing *Miller-El*, 537 U.S. at 336).

This Court has assessed the claims in Moore's motion to vacate his sentence on the merits and found them deficient. No reasonable jurist could find merit in any of Moore's claims, and therefore no certificate of appealability shall issue.

## CONCLUSION

For the aforementioned reasons, Moore's motion will be denied and no certificate of appealability shall issue.  A separate Order follows.


Date: <u>November 2, 2015</u>                                          <u>            /s/            </u>
                                                                ROGER W. TITUS
                                                        UNITED STATES DISTRICT JUDGE